UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA ex rel.
HASSAN FOREMAN,

                        Plaintiff,

     - against -

AECOM, AECOM GOVERNMENT SERVICES
INC., AC FIRST LLC, and AECOM/GSS
LTD.,

                       Defendants.

16 Civ. 1960 (LLS)

MEMORANDUM & ORDER

Relator Hassan Foreman brought this qui tam action on behalf of the United States of America pursuant to the False Claims Act, 31 U.S.C. §§ 3279-3733 ("FCA"), alleging that defendants submitted false and fraudulent claims to the government for payment. The United States declined to intervene in this action. The Court granted defendants' motion to dismiss the third amended complaint and entered judgment. Relator now moves to alter the judgment pursuant to Fed. R. Civ. P. 59(e) or for relief from the judgment pursuant to Fed. R. Civ. P. 60(b), and for permission to file a Fourth Amended Complaint. For the following reasons, the motion is denied.

## BACKGROUND

Foreman filed the original complaint under seal on behalf of the United States on March 16, 2016. On March 16, 2018, the case was unsealed and Foreman filed an amended complaint. On November 16, 2018, Foreman filed a second amended complaint. On

-2-

May 28, 2019, the government stated that it "has no plan to move to intervene on any claim at this time." Dkt. No. 47. On September 25, 2019, Foreman filed a third amended complaint, alleging that defendants violated various provisions of the FCA, 31 U.S.C. § 3729(a)(1)(A), (B), (D), (G) and 31 U.S.C. § 3730(h). Those violations were separated into five categories: (1) inaccurate timesheets and improper billing of labor, (2) inflated reports of man-hour utilization ("MHU") rate, (3) improper purchasing, tracking, and returning of government property, (4) entry into a "crony" contract with a payroll processing company, and (5) retaliation against Foreman for reporting other employees' travel violations.

Defendants moved to dismiss the third amended complaint on October 30, 2019, which the Court granted on April 13, 2020 in an Opinion and Order stating,

> Plaintiff's brief requests leave to amend. The reasons for dismissal of the Third Amended Complaint do not turn on points of pleading. They reflect the underlying invalidity of the merits of the claims, such as the government's continued disregard of defendants' shortfalls as being insufficiently serious or consequential ("material") to justify either litigation or severance of the relationship.
>
> Nevertheless, plaintiff has leave to move for leave to serve a fourth amended complaint, attaching a copy of the proposed pleading.

Foreman moved for reconsideration of that Opinion and Order on April 27, 2020, which the Court denied on May 19, 2020.

The Clerk entered judgment on June 5, 2020. That same day,

Foreman filed a letter motion requesting "that the Court vacate the Clerk's Judgment and Order and permit the Relator to move for leave to serve a fourth amended complaint." The Court denied that request, stating that "Plaintiff had seven weeks in which he could have, but did not, so move."

Foreman now moves to alter judgment or, in the alternative, for relief from judgment, in order to file his proposed Fourth Amended Complaint ("PFAC"). He also seeks to file this motion and the PFAC under seal.

**DISCUSSION**

Motion to Alter Judgment or for Relief from Judgment

District courts "may alter or amend judgment to correct a clear error of law or prevent manifest injustice." Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) (citation and internal quotation marks omitted). They may also relieve a party from a final judgment based on "mistake, inadvertence, surprise, or excusable neglect," "newly discovered evidence," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). "Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).

"A party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." Ruotolo v. City of New York,

514 F.3d 184, 191 (2d Cir. 2008). To "hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation." Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf, 930 F.2d 240, 245 (2d Cir. 1991) (citation and internal quotation marks omitted).

> Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint. Of course, in view of the provision in rule 15(a) that "leave [to amend] shall be freely given when justice so requires," see Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962), it might be appropriate in a proper case to take into account the nature of the proposed amendment in deciding whether to vacate the previously entered judgment.

Id.

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

Relator argues that the Court should alter or grant relief from judgment and permit him to file a Fourth Amended Complaint because (1) he did not unduly delay in seeking leave to amend, (2) he has not engaged in bad faith and does not have a dilatory motive, (3) he has not repeatedly failed to cure deficiencies with prior amendments, (4) defendants will not be prejudiced by the amendment, and (5) the amendment is not futile.

Defendants first argue that Foreman already moved to vacate judgment in his June 5, 2020 letter, and that Rule 59(e) "does not authorize successive motions." Howard v. United States, No. 04-CR-942 (FB), 2013 WL 6162818, at *1 (E.D.N.Y. Nov. 25, 2013).

Second, defendants argue that Foreman already possessed the documents underlying his new allegations when he filed the third amended complaint, and that he therefore "unduly delayed in proffering his amended allegations, which can be explained only by gamesmanship, or even bad faith." Defs. Br. at 5. Relator contends, however, that he did not receive the documents supporting his amendments until after he opposed defendants' motion to dismiss, and therefore "had no opportunity to include those documents in any prior version of the complaint." Pl. Reply Br. at 6.

Third, defendants argue that Foreman's proposed amendments would be futile.

Regardless of whether Foreman already moved to vacate judgment or whether his delay in raising new allegations was in bad faith, the proposed amendments in the PFAC do not remedy the deficiencies of the third amended complaint and would be futile. See Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003) ("it is well established that leave to amend a complaint need not be granted when amendment would be futile.)"

The PFAC contains additional allegations that defendants submitted inaccurate timesheets that billed for hours employees did not work, failed to accurately report their MHU rate, failed to properly track recoverable items, and gave advance notice to employees of audits. Those acts, however, are the same as those alleged in the third amended complaint, which the Court already considered and dismissed as immaterial.[1]

For example, the PFAC alleges that in January of 2014, defendants estimated that they were liable for $144 million due to "timesheet errors including signature errors, incorrect hour totals, and even multiple timesheets for the same person." PFAC ¶ 105. That $144 million figure was revised to $2.3 million to include only "high risk" failures in July of 2014. Id. ¶ 109. The PFAC states that "the Government was completely unaware of Defendants' internal findings related to the timesheet fraud, whether it is the $144M liability finding from January of 2014, or the $2.3M 'high risk' finding of July of 2014." Id. ¶ 110.

However, as discussed in the Court's previous opinion, a September of 2014 evaluation conducted by the Defense Contract

---

[1] Foreman argues again that express false claims certifying compliance with contractual requirements need not be material. That is incorrect. A "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the [FCA]." Bishop v. Wells Fargo & Co., 870 F.3d 104, 107 (2d Cir. 2017) (quoting Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 2002, 195 L. Ed. 2d 348 (2016) (internal quotation marks omitted)).

Audit Agency found that defendants' employees had access to and "the opportunity to edit other employees' timesheets," were "not properly reviewing timesheets for completeness and accuracy," were signing and approving timesheets even though they did not have signatory authority, were not identifying and reporting "idle time associated with labor" on timesheets, were not updating timesheets on a daily basis, were "filling out their timesheets in advance," and were "not properly correcting their timesheets prior to submission." White Aff. (Dkt. No. 69) Ex. 6. See April 13, 2020 Opinion and Order (Dkt. No. 88) at 17 (holding that "defendants' misrepresentations about labor, MHU, and property were not material to the government's payment decision" because "The documents and reports cited in the TAC demonstrate that the government investigated and knew about defendants' violations concerning labor billing, MHU rate, and property" but "continued to pay defendants and extend the MOSC contract"); Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 2003-04, 195 L. Ed. 2d 348 (2016) ("if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.").

The PFAC states that it is plausible that the government continued to pay defendants because "services contracts in war

zones, such as Afghanistan, are inherently difficult to replace." PFAC ¶ 187. That does not change the fact that the government had actual knowledge of defendants' violations yet repeatedly extended and "competitively awarded" the contract to defendants based on "previous performance." Id. ¶¶ 48, 51.

The PFAC also alleges that the government was unaware of "the scope of AECOM's failure to comply with these requirements or its cover-up" of violations. PFAC ¶ 99. The Court already addressed that argument, see April 13, 2020 Opinion and Order at 20 n.3:

> Foreman argues that the government "did not have the complete picture" of defendants' conduct because it did not know that the violations continued after the investigations or that defendants "engaged in a cover-up" to conceal the violations. But those activities are the continuation or "cover-up" of the same labor, MHU, and property violations of which the government was already aware.

The other proposed amendments to establish materiality are the same arguments Foreman already raised in opposition to defendants' motion to dismiss and in his motion for reconsideration. The PFAC alleges that defendants' actions to correct or prevent violations demonstrate materiality. However, as the Court already held, the government's and defendants' recognition that compliance with contractual requirements is important does not meet the "demanding" standard for materiality. Universal Health, 136 S. Ct. at 2003. See April 13, 2020 Opinion and Order at 16-17; United States ex rel.

Daugherty v. Tiversa Holding Corp., 342 F. Supp. 3d 418, 429 (S.D.N.Y. 2018) (finding that allegations of "general policies of the United States Government stating that compliance with grant conditions is important to the Government" are insufficient to show materiality).

Nor do the PFAC's allegations concerning the government's settlement agreement with a different defense contractor or intervention in a separate action against AECOM for claims submitted to the Federal Emergency Management Agency establish materiality; the government's conduct in those cases is not relevant to what it deems material in this action.

The proposed amendments to Foreman's conversion and reverse false claims would also be futile. With respect to the conversion claim, the PFAC alleges again in greater detail that defendants failed to track recoverable items in the required manner and could not account for thousands of pieces of equipment. That does not sufficiently state a conversion claim because, like the third amended complaint, it "does not identify any specific excess or recoverable item or other property that defendants possessed but failed to deliver to the government." April 13, 2020 Opinion and Order at 24.

With respect to the reverse false claim, the new allegation that defendants have a separate obligation to return overpayments and excess property to the government does not cure

the deficiency that the Court already identified: the reverse false claim "is based on the same labor billing and property violations underlying the direct false claims," which were dismissed due to a lack of materiality. Id. at 25.

Relator has already filed four versions of the complaint. His proposed amendments for a fifth version would be futile, and there is no exceptional circumstance or other valid basis upon which to vacate, alter, amend, or grant relief from the judgment.

## Motion to Seal

Relator requests permission to file unredacted versions of this motion, accompanying brief, and PFAC under seal because they contain information that defendants have designated as confidential pursuant to the parties' protective order. Defendants do not oppose the motion to seal.

The agreement of the parties is immaterial to an application for sealing, which involve policy issues "firmly rooted in our nation's history" and public confidence in the administration of justice. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). Sealing "of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." Id. at 124.

-11-

No such showing having been made, the unopposed motion for leave to file under seal is denied.

## CONCLUSION

Relator's motion to alter or amend judgment or for relief from judgment (Dkt. No. 101) is denied.

Relator's motion to seal (Dkt. No. 99) is denied.

So ordered.

Dated:   New York, New York
         August 13, 2020

                              *Louis L. Stanton*
                              _____
                              LOUIS L. STANTON
                              U.S.D.J.